| | |
|---|---|
| GOTTESMAN LAW, PLLC | HEARING DATE: May 24, 2017 at 10:00 a.m. |
| Andrew R. Gottesman (ARG-1992) | OBJECTIONS DUE: May 17, 2017 4:00 p.m. |
| 85 Broad Street, 29th Floor | |
| New York, New York 10004 | |
| Telephone: (646) 880-4456 | |
| Facsimile: (646) 844-2741 | |
| andrew@gottesmanlawpllc.com | |
| *Counsel to the Debtor* | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re

                                                    Chapter 11

K&H RESTAURANT, INC.,                  Case No. 16-B-13151-MKV

                                 Debtor.
-------------------------------------------------------------x

### DEBTOR' MOTION FOR ENTRY OF AN ORDER APPROVING STIPULATION WITH AMERICAN EXPRESS BANK, FSB CONSENTING TO THE USE OF CASH COLLATERAL *NUNC PRO TUNC* TO THE PETITION DATE

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

      K&H Restaurant, Inc., the debtor and debtor in possession in the above-captioned case (the "Debtor"), submits this motion (the "Motion") pursuant to sections 105 and 363(c)(2)(a) of 11.U.S.C. (the "Bankruptcy Code"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York the ("Local Rules") for entry of an order approving the Debtor's stipulation with American Express Bank, FSB (the "Secured Creditor") for the use of cash collateral. In support of the Motion, the Debtor relies on the Declaration of Mohamed Yousef (a copy of which is annexed hereto as Exhibit A, the "Yousef Declaration") and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105 and 363(c)(2)(a) the Bankruptcy Code, Rule 4001(b) of the Bankruptcy Rules and Rule 4001-2 of the Local Rules.

## BACKGROUND

3. The Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 13, 2016 (the "Petition Date").

4. The Debtor continues to operate its business and manage its property as a debtor and debtor in possession pursuant to Bankruptcy Code §§1107(a) and 1108.

5. No trustee or examiner has been appointed in this case. No official committee of unsecured creditors has been appointed.

6. The Debtor is a New York Corporation in the business of owning and operating a restaurant, doing business as "Raffles Bistro," located in the ground floor of the Lexington Hotel. The Debtor has operated at the same location for over 20 years and enjoys a loyal customer following. The Debtor also benefits from its current location because being in a busy hotel is central to its ability to generate business.

## RELIEF REQUESTED

7. By this motion, the Debtor requests that the Court approve the Stipulation authorizing the use of cash collateral under sections 105 and 363(c)(2)(a) of the Bankruptcy Code.

## THE INDEBTEDNESS

8. Prior to the Petition Date, the Debtor entered into that certain Business Loan and Security Agreement, dated as of May 18, 2016, with the Secured Creditor in the original aggregate

principal amount of $165,000.00 (the "Loan Agreement"). The Loan Agreement evidences merchant cash advances by the Secured Creditor, the principal amount of which are secured under the Loan Agreement (the "Lien") by certain Collateral described therein (including accounts, deposit accounts and cash received from credit card processors, and as otherwise defined in Section 11 of the Loan Agreement) (the "Collateral"). Since the Collateral includes all of the Debtor's accounts, the cash in those accounts constitutes cash collateral as defined under section 363(a) of the Bankruptcy Code ("Cash Collateral").

9. The Secured Creditor filed a proof of claim [Claims Register, No.: 6], asserting a first priority secured claim against the Debtor in the amount of $81,718.36, representing the balance of merchant cash advances made by the Secured Creditor to the Debtor and outstanding as of the Petition Date (the "Claim").

10. Following good faith and arms' length negotiations, the Debtor and the Secured Creditor have executed a stipulation, a copy of which is annexed hereto as Exhibit B. Through the Stipulation, the Secured Creditor consents to the use of Cash Collateral and the Debtor agrees to provide the Secured Creditor with certain adequate protection in exchange for such consent (the "Stipulation").

11. The Secured Creditor is the only known party who asserts a security interest in the Collateral.

**SUMMARY OF TERMS OF THE STIPULATION**

12. The following is a concise summary of the Terms of the Stipulation:

   a. Name of entities with an interest in the Cash Collateral: The Secured Creditor is the only known party with an interest in the Cash Collateral.

   b. Use of the Cash Collateral: The Cash Collateral will be used to finance day-to-day operations of the Debtor.

   c. Limitation on Use of Cash Collateral: No Cash Collateral may be used to pay any professional fees or expenses of any party in interest, to object to, contest in any manner or otherwise challenge, the validity, amount,

perfection or enforceability of the Loan Agreement or any other liens, claims or security interests securing the Indebtedness, to contest, challenge, limit or modify the right of a Secured Creditor to credit bid its claim in this case, attempting to prevent, hinder or otherwise delay any Secured Creditor from realization upon any Collateral other than to seek a determination as to whether an event of default has occurred hereunder, or to undertake any formal discovery proceedings in anticipation of any of the foregoing. <u>Stipulation</u> at ¶ 3.

d. <u>Amount of cash to be used</u>: The amount of Cash Collateral being used will fluctuate as the Cash Collateral will be used to fund the Debtor's day-to-day operations. As of April 30, 2017, the Debtors had $15,944.80 in Cash Collateral.

e. <u>Material Provisions to Closing</u>: None. The parties have agreed to the terms of the Stipulation. There is no contemplated closing.

f. <u>Impact on existing liens</u>: There are no other known parties that assert an interest in the Cash Collateral. All adequate protection liens are subject and subordinate to any existing liens, to the extent they exist.

g. <u>Termination Provisions</u>: The Secured Creditor's Consent to use Cash Collateral shall cease on the earlier of five (5) business days following the Debtor's receipt from either of the Secured Creditor of written notice that the Debtor is in default of this Stipulation and Order, which default remains uncured during such 5 business day period and the Debtor has not raised any dispute that it is in default, (b) upon entry of an order of the Court finding that the Debtor is in default of this Stipulation and Order, (c) the effective date of any plan confirmed in this case, (d) unless filed by the Debtor, in which case termination will occur upon the filing of the motion, the date of entry of an order dismissing this Chapter 11 case or converting this Chapter 11 case to a Chapter 7 case, or appointing a Chapter 11 trustee or examiner or other responsible person in the Chapter 11 case, (e) the date of entry of an order granting relief from the automatic stay for any purpose in respect of any of the Collateral, (f) the entry of an order reversing, revoking, modifying, amending, staying, rescinding or supplementing this Stipulation and Order. <u>Stipulation</u> at ¶ 19.

h. <u>Adequate Protection</u>: The Secured Creditor is granted replacement liens on and security interests in and to all of the Collateral, wherever located, now owned or hereafter acquired, and the proceeds thereof that are or have been acquired, generated or received by the Debtor subsequent to the Petition Date (excluding avoidance actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof), and all post-petition property to which the Secured Creditor's pre-petition liens attached, which replacement liens and security interests shall be deemed valid, perfected, continuing, unavoidable and enforceable not subject to subordination, impairment or avoidance to the same extent and with the same priority in which the Secured Creditor's pre-petition liens existed as of the Petition Date senior to all other liens against

the Debtor's estate existing as of the Petition Date pursuant to section 363 of the Bankruptcy Code (the "Replacement Liens"). The Replacement Liens are subordinate only to (i) any valid, properly perfected first priority lien upon Collateral that existed prior to the Petition Date and to which the Lien was subordinated as of the Petition Date and (ii) the Carveout. Stipulation at ¶ 5.

In addition to the Replacement Liens, the Secured Creditor is hereby granted an administrative expense claim (the "Superpriority Claim") under sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code in the Debtor's case, in the priority of their respective liens, in the amount by which the adequate protection afforded above proves to be inadequate and any post-petition diminution in value of the Collateral, capped by the amount of Secured Creditor's claim. This administrative claim shall be allowed and have superpriority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 of the Bankruptcy Code, except for the Carveout, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof but excluding avoidance actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof. Stipulation at ¶ 7.

In addition to the Replacement Liens and the Superpriority Claim, the Debtor shall pay to the Secured Creditor $2,000 each month until the earlier of the date on which the Claim has been paid in full and the Termination Date, as defined below. Stipulation at ¶ 8.

i. Equities of the Case Exception: Secured Creditor is entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and subject to the entry of a final order in connection with this Stipulation and Order, the "equities of the case" exception shall not apply. Stipulation at ¶ 5.

j. Carveout: The Replacement Liens and Superpriority Claims shall subject and subordinate in all cases to amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any applicable interest thereon, and any fees payable to the Clerk of the Bankruptcy Court, (iii) to the extent allowed by the Bankruptcy Court, fees and expenses of the consumer ombudsman appointed in this Chapter 11 case, (iv) to the extent allowed by the Bankruptcy Court, fees and expenses of professionals retained by the Debtor in this Chapter 11 case. Stipulation at ¶ 5.

k. 506(c) Waiver: No costs or expenses of administration of the Chapter 11 case or any successor case shall be charged against or recovered from or against any or all of the Secured Creditor, the Collateral and/or the Cash Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Secured Creditor, and no such consent shall be implied from any other action, inaction, or acquiescence of the Secured Creditor. Stipulation at ¶ 13.

l. Limited Relief from The Automatic Stay: The automatic stay imposed by Section 362 of the Bankruptcy Code shall be, and hereby is, modified only to the extent necessary to implement and effectuate the granting of adequate

protection under the terms and conditions of this Stipulation and Order. Stipulation at ¶ 11.

## USE OF CASH COLLATERAL

13. The use of cash collateral proposed under the Stipulation will provide working capital while the Debtor operates in chapter 11. The Debtor requires the use of cash collateral in light of the irreparable harm that will be suffered by the Debtor's estate if it does not have access to the cash necessary to continue operations. The Debtor uses the funds in its bank accounts fund their day-to-day operations. The Debtor purchases food and pantry items on a regular daily basis, from which it prepares meals to serve its customers. *Yousef Declaration* at ¶ 7. The restaurant pays its employees and related payroll obligations weekly. *Yousef Declaration* at ¶ 8. Without access to the Cash Collateral, the Debtor will not be able to purchase inventory or pay its employees. *Yousef Declaration* at ¶ 12. As a result, without the use of the Cash Collateral the Debtor will have to cease operations, thereby extinguishing the Debtor's ability to reorganize as a going concern to the detriment of the Debtor' unsecured creditors and employees. *Id*. Segregating the amount of the Claim so as to protect the Secured Creditor is not practical because the Debtor's accounts rarely, if ever, contain amounts in excess of the Claim. *Yousef Declaration* at ¶ 10.

14. Section 363(c)(2)(A) permits the use of the Cash Collateral on consent and does not require notice and a hearing. *See* 11 U.S.C §363(c)(2)(A). Nevertheless, the Debtor wishes to utilize the Bankruptcy Rules and the Local Rules in connection with this motion to put parties on notice of the terms of the Stipulation, and provide a full and fair opportunity for all parties to be heard. The Debtor also brings this motion to remedy its failure to obtain approval of its use of Cash Collateral since the Petition Date as a first day motion. The Debtor has inadvertently been utilizing the Cash Collateral to fund day-to-day operations since the Petition Date. The Secured Creditor was protected at all times against the diminution of the value of its collateral by maintaining a security interest the Debtor's hard assets (including its equipment) which are valued significantly higher than the Claim.

The Secured Creditor has not demanded adequate protection in this case. Furthermore, the Secured Creditor consents to the use of Cash Collateral since the Petition Date through any date on which the Stipulation is "so ordered" by the Court. *Stipulation* at ¶ 2. Thus, the Debtor believes that approval of the Stipulation including *nunc pro tunc* relief is appropriate.

## **PROPOSED ADQUATE PROTECTION**

15. The Debtor engaged in good faith negotiations with the Secured Creditor over the Debtor' use of the Cash Collateral, resulting in the Stipulation.

16. The Debtor will use some of the Cash Collateral to purchase new inventory and, through the Stipulation, grants replacement liens on the new inventory to the extent and amount of the current Lien the ("Replacement Liens"). The Replacement Liens are intended to be valid, perfected, continuing, unavoidable and enforceable not subject to subordination, impairment or avoidance to the same extent and with the same priority in which the Secured Creditor's pre-petition liens existed as of the Petition Date. The Replacement Liens will be subordinate to (i) any valid, properly perfected first priority lien upon Collateral that existed prior to the Petition Date and to which the Lien was subordinated as of the Petition Date, (ii) amounts payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any applicable interest thereon, and any fees payable to the Clerk of the Bankruptcy Court, (iii) to the extent allowed by the Bankruptcy Court, fees and expenses of the consumer ombudsman appointed in this Chapter 11 case, (iv) to the extent allowed by the Bankruptcy Court, fees and expenses of professionals retained by the Debtor in this Chapter 11 case (subparagraphs (ii) and (iv) collectively being referred to as the "Carveout"). Thus, the Replacement Liens do not interfere with the administration of the estate and do not seek to prime any other lender who may seek to assert a security interest in the Collateral. As noted, the Debtor does not believe there are any other secured parties asserting right in the Collateral. *Stipulation* at ¶ 5.

17. In addition to the Replacement Liens, the Stipulation grants the Secured Creditor n administrative expense claim (the "Superpriority Claim") capped by the amount of the Claim, under

sections 503(b)(1), 507(a) and 507(b) of the Bankruptcy Code in any amount by which the Replacement Liens adequate protection prove to be inadequate. This administrative claim is intended to have superpriority over all other costs and expenses of the kind specified in or ordered pursuant to sections 105, 326, 330, 331, 503(b), 507(a), 507(b) or 726 of the Bankruptcy Code, except for the Carveout and be payable from and have recourse to all pre-petition and post-petition property of the Debtor and all proceeds thereof but excluding avoidance actions under Chapter 5 of the Bankruptcy Code and any proceeds thereof. *Stipulation* at ¶ 7.

18. Finally, in addition to the Replacement Liens and the Superpriority Claim, the Debtor shall pay to the Secured Creditor $2,000 each month until the earlier of the date on which the Claim has been paid in full and the Termination Date, as defined in the Stipulation. Stipulation at ¶ 8.

19. Approval of the Stipulation shall be without prejudice to the rights and remedies of any party in interest to: (a) review, object to challenge or contest the validity, perfection of Secured Creditor's liens and security interests; or (b) assert any claims or causes of action against the Secured Creditor. However, the Stipulation proscribes the use of Cash Collateral in connection with a challenge the Secured Creditor's lien. *Stipulation* at ¶ 3.

## BASIS FOR RELIEF REQUESTED

20. The Debtor' use of estate property is governed by section 363 of the Bankruptcy Code. Section 363(c)(1) provides that a debtor may use estate property in the ordinary course of business without notice and a hearing. 11 U.S.C. § 363(c)(1). Section 363(c)(2), however, permits a debtor to use cash collateral only if the entity with an interest in such cash collateral consents or the Court authorizes such use. 11 U.S.C. § 363(c)(1)-(2). The Stipulation provides the necessary consent to allow the use of the Cash Collateral under 363(c)(2)(A).

21. The Bankruptcy Code does not explicitly define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection. What constitutes adequate protection must be evaluated on a case-by-case basis. *See Resolution Trust Corp.*

*v. Swedeland Dev. Group (In re Swedeland Dev. Group Inc.*), 16 F.3d 552, 564 (3d Cir. 1994); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1985)*; In re Mosello,* 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996)*; In re Realty Southwest Assocs.*, 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); *In Re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

22. Adequate protection is meant to ensure that the secured lender receives the value for which it originally bargained. *See Mosello*, 195 B.R. at 288 (citing *Swedeland*, 16 F.3d at 564) ("The purpose of 'adequate protection' for a creditor 'is to insure that the creditor receives the value for which he bargained prebankruptcy.'"). Courts have noted that "[t]he essence of adequate protection is the assurance of the maintenance and continued recoverability of the lien value during the interim between the filing. .. and the confirmation." *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982); *In re O.P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987). The purpose of the requirement for adequate protection is to protect a secured creditor from diminution in value of its collateral during the period the collateral is used. *See In Re 495 Cent. Park Ave. Corp.*, 136 B.R. 626, 631 (Bankr. S.D.N.Y. 1992); *Beker Indus.*, 58 B.R. at 736; *In re Ledgemere Land Corp.,* 116 B. R. 338, 343 (Bankr. D. Mass. 1990); *In re Kain,* 36 B.R. 506, 513 (Bankr. W.D. Mich. 1988).

23. The Secured Creditor has agreed that the Stipulation provides it with sufficient adequate protection and consents to the use of the Cash Collateral. Section 361of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property," *See* 11 U.S.C. § 361. There is no other known party with a security interest in the Collateral, thus there is no other party which is entitled to adequate protection.

24. As noted, the Debtor has negotiated with the Secured Creditor over the consensual use of the Cash Collateral and believes that the terms of the Stipulation are fair and reasonably compensate the Secured Creditor for any potential diminution of the value of its Collateral. Given

the significant value the Debtor stands to lose if they are denied access to continued use of the Cash Collateral, the proposed protections are appropriate, justified and reasonable under the circumstances.

25. The Debtor requests that the automatic stay imposed by section 362 be modified to the extent necessary to implement and effectuate the granting of adequate protection under the Stipulation. Orders grating stay modifications are commonplace and standard features of debtor in possession financing arrangements and, in the Debtor's business judgment, are reasonable and fair under the circumstances of this chapter 11 case.

26. Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title…" 11 U.S.C. § 105(a). The alternative to granting the Debtor use of cash collateral is the complete cessation of the Debtor' business operations, which is contrary to the purposes of chapter 11 and to interests of the Debtor' unsecured creditors and employees. *See Chrysler Creditor Corp. v. Ruggiere* (*In re George Ruggiere Chrysler-Plymouth, Inc.*), 727 F.2d 1017, 1019 (11th Cir. 1984) ("A debtor attempting to reorganize a business under Chapter 11, clearly has a compelling need to use 'cash collateral' in its effort to re-build. Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated."); *see also Northwest Airlines Corp. v. Ass'n of Flight Attendants-CWA* (*In re Northwest Airlines Corp.*), 349 B.R. 338, 380 (S.D.N.Y. 2006) ("The Bankruptcy Code embodies a strong policy in favor of reorganization").

## NOTICE

27. No trustee, examiner or statutory creditors' committee has been appointed in this chapter 11 case. Notice of this Motion will be provided to: (i) Office of the United States Trustee for the Southern District of New York; (ii) the Internal Revenue Service; (iii) New York State Department of Finance; (iv) all entities that have filed notices of appearance in this case; and (v) all

other known persons holding a claim or interest in this case, as listed in the mailing matrix attached to the ECF docket of this case. The Debtor submits that such notice is sufficient under the circumstances.

### **NO PREVIOUS REQUEST**

28. The Debtor has not previously applied to this or any other Court for the relief sought herein.

### **CONCLUSION**

29. WHEREFORE, the Debtor respectfully requests entry of the Proposed Order annexed hereto granting the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated: May 5, 2017
    New York, New York

GOTTESMAN LAW, PLLC

by: Andrew R. Gottesman
Andrew R. Gottesman
85 Broad Street, 29th Floor
New York, New York 10004
Telephone (646) 880-4456
Facsimile (646) 844-2741
andrew@gottesmanlawpllc.com
*Counsel to the Debtor*