1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 16-13151-mkv

4  - - - - - - - - - - - - - - - - - - - - - - - - - - x

5  In the Matter of:

6

7  K&H RESTAURANT, INC.,

8        Debtor.

9  - - - - - - - - - - - - - - - - - - - - - - - - - - x

10

11            U.S. Bankruptcy Court

12            One Bowling Green

13            New York, NY  10004

14

15            April 26, 2017

16            11:11 AM

17

18

19

20

21  B E F O R E :

22  HON MARY KAY VYSKOCIL

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO:  UNKNOWN

1    Hearing re:  Motion Filed by the Debtor for an Order

2    Authorizing and Ratifying Payment of Prepetition, Accrued

3    Employee Wages, Related Payroll Taxes and Related

4    Obligations Nunc Pro Tunc from November 13, 2016

5

6    Hearing re:  Motion Filed by the Debtor for an Order

7    Establishing Procedures for Interim Compensation and

8    Reimbursement of Expenses of Professionals

9    Objection Filed by Diamondrock NY Lex Owner LLC

10

11   Hearing re:  Application Filed by Andrew R. Gottesman, as

12   Debtor's Attorney, for Allowance of Compensation and

13   Reimbursement of Expenses

14   Objection Filed by Diamondrock NY Lex Owner LLC

15

16   Hearing re:  Application Filed by Davis & Gilbert LLP, as

17   Special Litigation Counsel for Debtor and Debtor in

18   Possession, for Allowance of Compensation

19   Objection Filed by Diamondrock NY Lex Owner LLC

20

21   Hearing re:  Motion Filed by Andres Martinez, Myroslava

22   Velychko, Eman Abdelkarim and Noedith Rojas for Relief from

23   the Automatic Stay

24   Objection Filed by the Debtor

25

1   Hearing re:  Motion Filed by the Debtor to Extend

2   Exclusivity Period for Filing a Chapter 11 Plan and to

3   Solicit Acceptances Thereto

4   Objection Filed by Diamondrock NY Lex Owner LLC

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Sonya Ledanski Hyde

1  A P P E A R A N C E S :

2

3  WILK AUSLANDER

4       Attorneys for Diamondrock

5       1515 Broadway

6       New York, NY 10036

7

8  BY:  ERIC SNYDER

9

10  GOTTESMAN LAW, PLLC

11       Attorneys for the Debtor

12       85 Broad Street, 16th Floor

13       New York, NY 10004

14

15  BY:  ANDREW R. GOTTESMAN, ESQ.

16

17  THE LAW OFFICES OF WILLIAM CAFARO

18       Attorneys for the Creditor Movants

19       108 West 39th Street, #602

20       New York, NY 10018

21

22  BY:  WILLIAM CAFARO

23

24

25

1                    P R O C E E D I N G S

2            THE COURT:  All right.  Case Number 16-13151, K&H

3    Restaurant, Inc.

4        (Pause)

5            THE COURT:  All right.  Good morning.  Could I

6    have appearances, please?

7            MR. GOTTESMAN:  Good morning, Your Honor.  Andrew

8    Gottesman for the debtor.

9            MR. SNYDER:  Your Honor, good morning.  Eric

10   Snyder, Wilk Auslander, for Diamondrock, the landlord.

11           THE COURT:  Good morning.

12           MR. VELEZ-RIVERA:  Andrew Velez-Rivera for the

13   U.S. trustee.

14           THE COURT:  Good morning.

15           MR. CAFARO:  Good morning, Your Honor.  Bill

16   Cafaro for the creditor/movant on the motion for stay.

17           THE COURT:  All right.  And I'm sorry.  Your last

18   name?

19           MR. CAFARO:  Cafaro, C-a F as in Francis A-r-o.

20           THE COURT:  And your firm?

21           MR. CAFARO:  Law Offices of William Cafaro.

22           THE COURT:  Okay.  Thank you.  All right.  Have a

23   seat everybody for one moment.

24           All right.  We have on the calendar today a number

25   of matters.  I think we have six different matters.  Some of

1  them I think can be grouped together, but why don't we start

2  with the debtor's motion for an order authorizing and

3  ratifying payment of prepetition wages.

4          MR. GOTTESMAN:  Well, certainly, Your Honor.

5  That's a fine place to start, but I would like to let you

6  know that last night we agreed to adjourn the three

7  compensation-based motions with the landlord and the U.S.

8  trustee who objected to those motions.  So there was a

9  motion on for -- there's two applications for -- the first

10 application's for interim compensation and reimbursement of

11 expenses for my firm and for special counsel.

12         THE COURT:  For Davis & Gilbert?

13         MR. GOTTESMAN:  Correct.

14         THE COURT:  And then --

15         MR. GOTTESMAN:  And an interim compensation

16 procedures motion.

17         THE COURT:  The procedures motion's adjourned as

18 well?

19         MR. GOTTESMAN:  Yes, ma'am.

20         THE COURT:  All right.  Have you bothered to

21 notify chambers of that --

22         MR. GOTTESMAN:  We just --

23         THE COURT:  -- and get an adjourn date?

24         MR. GOTTESMAN:  We just had that agreement last

25 night, and so I was going to notify chambers and get an

1   adjourn date today.

2           THE COURT:  Okay.  All right.  So please do that

3   when we recess this morning, all right.

4           MR. GOTTESMAN:  Absolutely.

5           THE COURT:  All right.  So as I said, let's start

6   with the employee wage motion.  And the first question I had

7   which screams out off of the page is that there has been a

8   post-petition payment apparently.

9           MR. GOTTESMAN:  That is true, Your Honor.  There

10  was a post-petition payment that was made in November.  The

11  post-petition was made, the payment was made inadvertently

12  by my client in the effort to make sure their workers got

13  paid and stayed on the job.

14          THE COURT:  All right.  Does your client now

15  understand that having filed for bankruptcy protection your

16  client is not permitted to make payments and to go about

17  business as usual without -- in terms of making payments or

18  spending assets -- without coming to the Court?

19          MR. GOTTESMAN:  Yes, Your Honor.  I've made that

20  very clear to him.

21          THE COURT:  All right.  So go ahead and, you know,

22  make your record with respect to your motion.

23          MR. GOTTEMAN:  Your Honor, the debtors, I would

24  say, inadvertently made a payment on November 20th to

25  certain of their workers basically paying payroll.  Payroll

1   is usually -- is paid always at least one week and

2   potentially more in arrears.  So the payment that was made

3   to these particular people, there was an $11,000 payment.

4   $7,491 of that was wages.  4,289 of that was -- excuse me --

5   was payroll taxes.  That was to pay for the week.  The pay

6   compensated those particular workers for the week prior to

7   the filing of the bankruptcy case.

8           So the request in the motion or the relief that is

9   requested is under 363(b) to be able to use or to ratify

10  those payments retroactively and to seek authority under

11  363(b) for those payments.

12          THE COURT:  Which should have been done as a

13  first-day motion.

14          MR. GOTTESMAN:  Absolutely.

15          THE COURT:  Does anybody wish to be heard with

16  respect to the motion?  Anything from the U.S. trustee?

17          MR. VELEZ-RIVERA:  We have no objection, Your

18  Honor.

19          THE COURT:  All right.  No objections have been

20  filed to the motion.  As I said, I admonish you and your

21  client in the strongest terms that you need to be attentive

22  to limitations on what the debtor is permitted to do now

23  that it has filed for bankruptcy protection in this Court.

24  But with that admonition, the motion will be granted.

25          MR. GOTTESMAN:  Thank you, Your Honor.

1          THE COURT:  All right.  So the next motion that I

2   had on is the interim compensation procedures.  You're

3   saying that one's adjourned along with the various fee

4   applications, right?

5          MR. GOTTESMAN:  Yes, ma'am.

6          THE COURT:  All right.  So that -- in terms of the

7   debtor's motions, let's finish those off.  There's the

8   motion by the debtor for relief from the -- I'm sorry -- to

9   extend your exclusivity period.  So why don't we take that

10  motion now.

11         MR. GOTTESMAN:  That's correct, Your Honor.  The

12  debtors are seeking relief under Section 1121(d) to extend

13  the exclusivity period for 120 days.  The 120 days would

14  put us out to -- I'm sorry -- the current exclusivity period

15  expire on March 13th.  We made the motion prior to March

16  13th, and under the local rules, we get an automatic

17  extension until the motion can be heard.

18         The requested extension is for 120 days, which

19  would take us out to July 11th.

20         THE COURT:  Right.

21         MR. GOTTESMAN:  The debtors submit both in their

22  papers and in the reply to the landlord's objection that the

23  nine factors that are generally considered with respect to

24  exclusivity are all satisfied both in the record and by the

25  declaration of (indiscernible) who is the principal and

1    owner of the debtor.

2          But the Court is permitted to take into

3    consideration other evidence and other -- I mean, excuse me

4    -- other factors outside of those nine factors.  And I think

5    the one that is or I believe the one that is the most

6    salient is the fact that this extension would put out the

7    exclusivity dates only one month after the time when the

8    debtor has to have their lease either assumed or rejected.

9    Like they don't have to assume or reject as extended by this

10   Court on May -- on March 8th to June 11th.  So this gives us

11   one month after that happens to file a plan.

12          Clearly, as I'm sure Your Honor is aware and by

13   reading the papers can clearly see that the lease is the key

14   issue in this case.  And without the lease, there is nothing

15   to base a plan around.  So we would say that that is a

16   salient factor in establishing cause under 3 -- under

17   1121(d) for the extension of the exclusive periods.

18          As a practical matter, the other factors that are

19   considered under the what we have termed the Adelphia

20   factors --

21          THE COURT:  Right.

22          MR. GOTTESMAN:  -- are all applicable in this

23   case.  You know, the case, while it's a small case, is

24   somewhat more complex than other small cases in that there

25   is a lease that not only is subject to an objection from the

1   landlord and a great deal of litigation thereon, but also

2   subject to a collective bargaining agreement.

3           The collective bargaining agreement alone sets out

4   three different classes of hotels, four classifications of

5   workers, different pay terms, termination terms, hours,

6   vacation time for all of those workers.  And in a

7   restaurant, workers change relatively frequently, so there

8   is a bit of complexity to the issues and not only how the

9   restaurant runs but how well those sorts of things fit

10  together.

11          The debtors are paying all of their liquidated

12  noncontingent post-debt -- post-petition debts as they come,

13  too.

14          THE COURT:  Right.  There seems to be some dispute

15  about that.

16          MR. GOTTESMAN:  Yes, I understand that.  As I said

17  in my reply to the landlord's objection, I noted that there

18  is a still a disputed amount that is owed to the union.  The

19  union, we have been in contact with the union and we're

20  trying to reconcile that amount.  For their own reasons, the

21  union sent a letter to Highgate, which is not the landlord.

22  Highgate is the management company.  They sent the letter to

23  Highgate demanding payment of a specific amount.

24          Since that letter, the union has -- I've been in

25  contact with the union, the union's counsel personally, and

1    the union's counsel has requested information which they

2    have gotten but information in order to allow them to ask to

3    be able to reconcile the amount that the restaurant actually

4    owns.  So I don't know where the number in that April 11th

5    letter came from, but I don't also have a particular

6    understanding of how it can be accurate if they're

7    continuing to request information to ascertain that number.

8          THE COURT:  Right.  But the landlord has paid some

9    portion?

10         MR. GOTTESMAN:  The landlord paid a pre-petition

11    amount, and the pre-petition amount was for an arbitration

12    that happened in May -- I want to say in March of 2015.

13         THE COURT:  Okay.

14         MR. GOTTESMAN:  But they have not paid any portion

15    of the post-petition amount and so none of that is owing

16    under the lease to the landlord.  The debtor does not

17    dispute that they owe amounts to the union for continued

18    operations post-petition, but they do not know what that

19    amount exactly is and are working diligently with the union

20    to figure out what the amount is and have assured me that

21    once that amount is ascertained, that that will get paid

22    immediately.

23         THE COURT:  Okay.  All right.  Does the landlord

24    wish to be heard?

25         MR. SNYDER:  Oh, yeah.  Thank you, Judge.

1           Your Honor, as Mr. Gottesman alluded --

2           THE COURT:  You want to just state your appearance

3    for the record, please?

4           MR. SNYDER:  I'm sorry.  Eric Snyder, Wilk

5    Auslander, for the landlord.

6           THE COURT:  Right.  Now before we walk into the

7    discussion on the motion to sell, I just want to be clear

8    that I understand what you did here.  You basically filed an

9    objection to this motion, right?

10          MR. SNYDER:  Correct, Your Honor.

11          THE COURT:  And two other motions and that's ECF

12   number 67.  And then you filed in effect a surreply.

13          MR. SNYDER:  Correct, Your Honor, because when we

14   became aware of the letter on April 11th, the hearing was

15   scheduled for the next day.

16          THE COURT:  All right.  But when --

17          MR. SNYDER:  We didn't want to surprise the Court

18   with it, so we wanted to put Mr. Gottesman as well as the

19   Court on notice that we were getting dunned again for

20   additional sums.  And then I thought it was a good fortune

21   that the hearing was adjourned so that the Court would have

22   an opportunity to read it and Mr. Gottesman would have an

23   opportunity to respond.

24          THE COURT:  All right.  Well, I'm putting you on

25   notice unauthorized surreplies are not acceptable to the

1   Court.  If there are developments that happen after a matter

2   is fully briefed and before it comes on for a hearing,

3   there's a mechanism for a very brief one-line letter saying,

4   you know, the attached is a subsequent development relevant

5   to the motion or the attached is a case that came down but

6   not a lot of briefing and commentary.

7           So going forward, the schedule for briefing will

8   be enforced by the Court.

9           MR. SNYDER:  I apologize, Your Honor.

10          THE COURT:  All right.

11          All right.  So thank you.  Please talk to me

12  though about where's the downside and the harm to the

13  landlord here in extending the exclusivity period?  Is it

14  not in everybody's interest in having some kind of feasible

15  plan put forward?

16          MR. SNYDER:  Well, Your Honor, with respect to the

17  landlord being not only the largest unsecured creditor but I

18  believe now the largest contingent administrative creditor,

19  would obviously, Your Honor, like the lease rejected, would

20  like to make a distribution to creditors, would like to take

21  over the space.

22          I would point out, Your Honor, that I received an

23  e-mail from Mr. Gottesman yesterday evening as he suggested

24  putting off the hearing on the fee issues.  And one of the

25  reasons stated is because a secured creditor had not planned

1    to consent and that the debtor has been using cash

2    collateral for six months without the use of consent of a

3    secured creditor.  So I went on to the Division of

4    Corporations website and saw there are four secured

5    creditors with blanket securities.

6              So when the Court talks about post-petition

7    payments and pre-petition amounts, we now have the use of

8    cash collateral without an agreement and we have

9    administrative expenses, Your Honor.  It's the same amount,

10   Your Honor, as it was pre-petition, approximately 15,000 a

11   month due to the landlord or due to the union on account of

12   wage obligations.  So that amount, Your Honor, since

13   November 6, the petition date is six months at 15,000 a

14   month is $90,000.

15             Now it may be $80,000 and it may be $100,000, but

16   there was already an arbitration for $15,000.  So the debtor

17   is using cash collateral without consent, the debtor is

18   accruing post-petition administrative expenses, and is not

19   paying them.

20             And I appreciate, Your Honor, that Mr. Gottesman

21   is working with the union at the end of April, but this case

22   has been in front of Your Honor for six months.  So it's a

23   bad pun, Your Honor, but there's no plan here.  There's no

24   plan to come out of bankruptcy, but it's really business as

25   usual.  And the news I give the Court is just more bad news.

1          The last thing that's happened since last hearing,

2     Your Honor, and I will --

3          THE COURT:  Thank you.  But let me --

4          MR. SNYDER:  I'm sorry.

5          THE COURT:  -- interrupt you and ask you to back

6     up.  What -- I'm not following exactly what has been paid

7     with cash collateral without authorization from the Court.

8     And if there is something --

9          MR. SNYDER:  Everything.

10          THE COURT:  -- that's a --

11          MR. SNYDER:  The debtor's been operating for six

12    months.

13          THE COURT:  But not paying the landlord are you

14    telling me?

15          MR. SNYDER:  Not been paying the landlord these

16    amounts or not been paying the union these amounts.  We've

17    gotten our base rent, yes, Your Honor.

18          THE COURT:  Not paying the arbitration award

19    amounts?

20          MR. SNYDER:  The arbitration aware, Your Honor, is

21    all pre-petition.

22          THE COURT:  Yeah.

23          MR. SNYDER:  The amount post-petition, Your Honor,

24    is the letter we got from the union saying, surprise,

25    surprise, you have to pay us another 169 for 11 months, the

1    11 months being from May 2016 to March 2017.  November,

2    December, January, February, March is assessment by the

3    union against the debtor which we're on the hook for for

4    five months.

5             THE COURT:  Right.  But he's telling you he's

6    working with the union on this.

7             MR. SNYDER:  I understand, Your Honor.  This case

8    has been in bankruptcy five months.  Those amounts aren't

9    paid, and my client is inclined to pay them because they

10   want to have good relationships with the union.  So while

11   the debtor is doing whatever the debtor is doing, we are

12   being put on the hook for post-petition administrative

13   expenses that are not being paid.

14             And if you want to know what's in the landlord's

15   best interest, Your Honor, and I'll be frank, it's to get

16   this tenant out.  I understand --

17             THE COURT:  Well, I understand that's your

18   objection, but --

19             MR. SNYDER:  I understand, Your Honor, but if we

20   propose a plan, the plan will pay something.  I don't know

21   what the Debtor's plan is, but the cure on this is now

22   exceeding $300,000.

23             And the last point, Your Honor, about what's going

24   on with the lease, yes, the lease is the issue.  My

25   understanding is though that counsel went into state court

1    earlier this month and told the judge that there's --

2              THE COURT:  Counsel for the debtor?

3              MR. SNYDER:  Correct, Your Honor.  Special counsel

4    I'm told.  The judge in state court that that court can't

5    determine the issue of whether the lease terminated pre-

6    petition because they had made a motion to enforce the stay

7    which means, Your Honor --

8              THE COURT:  Well, there is a stay.

9              MR. SNYDER:  Your Honor, we would suggest there is

10   no stay, and the debt has been operating in state court for

11   six months.  But, Your Honor, someone has to decide that

12   issue.  And what I said to Mr. Gottesman the day after this

13   hearing six weeks ago I think is we need to tee up that

14   issue because the 210th day, Your Honor, under 365(d)(4)

15   expires in 47 days.  It expires -- today is April 25th.  It

16   expires on June 10th.

17             So what I told Mr. Gottesman is make the motion

18   now to do whatever you need to do with the lease because I

19   don't want to be here on June 10th with a request that that

20   day be extended.  Obviously with everything that's going on,

21   Your Honor, the landlord is unwilling to extend that date.

22   So we were told there's evidence that the lease didn't

23   terminate pre-petition.  I would love to see it.  But that

24   motion has not been made.  I don't --

25             THE COURT:  And that motion's not before me, so.

1          MR. SNYDER:  I understand, Your Honor, but we're

2     talking about the reasons why exclusivity shouldn't be

3     extended.  Those are the reasons because the motion to deal

4     with that issue has not been made here.  The state court has

5     been frozen because they're not going to move against a

6     counsel saying that the stay is in effect.  These issues

7     about use of cash collateral and post-petition wages and

8     unpaid administrative expenses is the reason the cause

9     doesn't exist when the debtor has not met its burden of

10    extending exclusivity.  And that's why we objected.

11          And I don't consider these to be inconsequential

12    things.  I don't normally in small cases object to

13    exclusivity, but these are real.  I have nothing --

14          THE COURT:  Anything else?

15          MR. SNYDER:  -- further, Your Honor.

16          THE COURT:  All right.  Sure.  I mean what do you

17    have to say to these issues?  I mean these are serious

18    concerns.

19          MR. GOTTESMAN:  I don't deny that they are serious

20    concerns, but I would say a couple of things.  One, the

21    landlord's entire purpose here is to have the lease rejected

22    to have the lease terminated and get my clients out.

23          THE COURT:  He just said that.

24          MR. GOTTESMAN:  Right.  So anything that is --

25    anything they said is only geared toward that purpose.  And

1    filing a plan -- that's the only purpose in wanting to file

2    a plan here is to push that purpose forward and to put

3    pressure on the debtor in order so the debtor capitulates to

4    get out of this phase.  That's it and that's all.

5            But I will say that the administrative -- first of

6    all, the landlord is not an administrative creditor at this

7    point.  The landlord is being paid in full.  The only

8    administrative creditor at this point is the union.  And the

9    numbers that the landlord is using, $15,000 a month, have

10   not been proven, have not been trued up.  They're based on a

11   past amount that has just averaged over time.

12           We have no idea whether that amount is front

13   loaded, whether the amount that the union in a letter which

14   I said, Your Honor, kind of has no basis with respect to the

15   actual number in the letter, but the number hasn't been

16   proven.  The amount owed to the union has not been

17   reconciled.  We don't know if the amount that the --

18           THE COURT:  Right.  I understand that point.

19           MR. GOTTESMAN:  And the $170,000 in that letter

20   accounts for times most of that is pre-petition.  It's not

21   post-petition.

22           THE COURT:  I understand all that, but the

23   landlord does have a legitimate concern that it is getting

24   Dunning letters in effect I'm going to call them from the

25   union and that it has a joint and several obligation and is

1    concerned about maintaining good relations with the union.

2    And you are prejudicing that interest.

3              MR. GOTTESMAN:  We're prejudicing that interest

4    only to the point that the union makes it an issue with the

5    landlord.  First of all, the union sent a letter to not the

6    landlord, to the management company.  I realize that they

7    are -- they're not related companies, but they're two

8    different companies.  If the landlord wants to pay the union

9    and bring a motion for stay relief, they're free to do that.

10   And if that's how they want to tee all this up, they can do

11   it.  But ultimately, the amount that the debtor owes the

12   union is still in question.

13             And as I said, the debtor is fully prepared and

14   fully able to pay the union what they're owed as soon as we

15   understand what they're owed and they continue to ask us for

16   information.  I've now given them all the information they

17   want.  I've given them payroll records, termination dates,

18   hire dates --

19             THE COURT:  Right.

20             MR. GOTTESMAN:  -- the kinds of things that they

21   need to --

22             THE COURT:  But the payment to the union isn't the

23   only issue.  What about this, you know, comment by the

24   landlord that you are basically operating your business and

25   using cash collateral without any authorization from the

1    Court?

2              MR. GOTTESMAN:  Your Honor, that is an issue with

3    at least -- there's one secured creditor that I'm already

4    talking to.

5              THE COURT:  That's a serious issue.

6              MR. GOTTESMAN:  I could not agree more.  It is a

7    serious issue.

8              THE COURT:  I mean are you telling me that that

9    is, in fact, happening?

10              MR. GOTTESMAN:  The first I heard about it was

11    today.  And the first I heard about it was from the landlord

12    who clearly has an agenda, so whether it's true or it's not

13    true --

14              THE COURT:  His agenda is that if you file for

15    bankruptcy protection, you have to follow the rules.

16              MR. GOTTESMAN:  Yes.  I --

17              THE COURT:  I just discussed that with you in

18    connection with your first motion that's on for today.

19              MR. GOTTESMAN:  I understand that, but I had no

20    knowledge that there were other secured creditors such that

21    there would be other -- that there would be cash collateral

22    that is being used.  And I will reach out to all of those

23    creditors today and get either their consent or bring a

24    motion immediately for the Court to approve the use of cash

25    collateral or not the use of collateral.

1    THE COURT:  Counsel, I mean, look, in the normal

2  course, those are the kinds of motions you're supposed to

3  bring at the outset of the case, right?

4    MR. GOTTESMAN:  Your Honor, I --

5    THE COURT:  I mean this is not a brand new case.

6    MR. GOTTESMAN:  I couldn't agree more, but I did

7  not bring this case.

8    THE COURT:  I understand that, and the fact that

9  you're relatively new I'm going to call it to the case is a

10  factor that the Court is considering in connection with your

11  request for more time.  But the more I'm learning about what

12  has gone on and what apparently continues to go on frankly

13  is troubling to me.

14    MR. GOTTESMAN:  And I don't disagree and frankly,

15  it's trouble to me to continue to put out fires as they

16  arise.  However, I think that we had to have at least been

17  diligent in putting out those fires or at least -- and in

18  finding them.  I mean truthfully, I need to make sure that

19  these are actually secured creditors and do some homework

20  and understand that.  And to the extent that they are, we

21  will deal with that in the fastest way possible, either et a

22  stipulation from them to use -- continue to use cash

23  collateral or bring a motion to ask Your Honor for the

24  approval to use cash collateral.

25    THE COURT:  Right.  But I mean in all candor, you

1   haven't really been acting with dispatch here.  I mean what

2   about counsel's suggestion that he talk to you about the

3   fact that, you know, there's no plan, not a capital P, no

4   game plan, no discussion's gone on with respect to the lease

5   issue and tell me --

6           MR. GOTTESMAN:  Your Honor, I think that is not

7   true that there has not been discussions that have gone on

8   with respect to the lease.  In fact, most recently there

9   have been discussions that have gone on with respect to how

10  we can reconcile with the landlord and do something that is

11  in both -- in everybody's interest and settle all of the

12  disputes with the landlord.

13          THE COURT:  And your date to assume or reject the

14  lease is June 10th?

15          MR. GOTTESMAN:  Correct.  So we have to make a

16  motion in the next two weeks.

17          THE COURT:  All right.  Anything else from

18  anybody?  Anything from the U.S. trustee?

19          MR. VELEZ-RIVERA:  No, Your Honor.

20          THE COURT:  All right.  So the Court has listened

21  to argument of counsel and carefully reviewed your papers.

22  I'm very troubled frankly by some of what I've learned

23  during the course of argument here.

24          My strong inclination is to afford counsel an

25  opportunity to try to make progress towards bringing its

1    case to a successful point where a plan can be proposed and

2    confirmed, but the evidence that I heard today frankly is

3    troubling to me.  I still conclude that weighing the

4    Adelphia factors, there is cause or some extension of the

5    exclusivity period here, but I'm not prepared to give you

6    120 days given the course of conduct that's been going on

7    here.

8              So the motion will be granted only to the extent

9    of a 60-day extension which takes you then to shortly after

10   the deadline for dealing with the lease on June 10th.  So

11   sometime in June we're going to have a sense of what's

12   happening here and where you're going with all of this.

13             MR. GOTTESMAN:  Yes, Your Honor, and --

14             THE COURT:  So please submit a revised order in

15   Word format.

16             MR. GOTTESMAN:  I will do that.  But just to

17   clarify, there's not -- that does not prejudice in any way a

18   further request for an extension at that time?

19             THE COURT:  You have whatever rights you have

20   under the Code.

21             MR. GOTTESMAN:  Thank you.

22             THE COURT:  Bear in mind the admonition and the

23   dissatisfaction that I've expressed with respect to the

24   conduct of the debtor.  And that certainly will bear on any

25   further requests to the extent one is even authorized.

1          MR. GOTTESMAN:  (Indiscernible), Your Honor.

2          THE COURT:  All right.

3          All right.  So that brings us then to the motion

4     by certain employees -- I'm going to call them to shorthand

5     it -- for relief from the automatic stay.   So if you'll

6     just give me one moment to shift my own files.  Excuse me.

7          (Pause)

8          THE COURT:  All right.  Good morning, counsel.

9          MR. CAFARO:  Good morning, Your Honor.

10         THE COURT:  You may proceed.

11         MR. CAFARO:  Thank you.

12         THE COURT:  Do you want to just state your

13    appearance for the record?

14         MR. CAFARO:  Yes.  Bill Cafaro for the employees,

15    employee creditors who are seeking relief from the automatic

16    stay.  The corporate debtor has been stealing the tips from

17    his employees for years.  There was a prior wage case in

18    which I've cited in my papers which had identical

19    allegations brought by six of the employees --

20         THE COURT:  And any of them the same?

21         MR. CAFARO:  I'm sorry.

22         THE COURT:  Any overlap among the -- is it the

23    same --

24         MR. CAFARO:  No.

25         THE COURT:  -- six?

1          MR. CAFARO:  No.

2          THE COURT:  Okay.

3          MR. CAFARO:  It was six different employees.  I

4     have four.  But the allegation I'm referring to is that the

5     employees are to this day they are outright refused when

6     they ask to see how the tips are being distributed.  This is

7     money that the debtor is taking in as a fiduciary and he has

8     never that I can find in all the years ever shown the

9     printout to the employees to show how the tipped item in

10    their paycheck is calculated.  I've never seen this in any

11    restaurant before ever.

12          When the previous employees were told -- they'd

13    like to see it.  They were told by management, "If you don't

14    like it, you can work somewhere else."

15          THE COURT:  Remind me where that prior case was

16    and what the outcome was?

17          MR. CAFARO:  It was settled for $150,000.  And I

18    can -- the index number is in the papers, and if I'm not

19    mistaken, it was appended to my papers.  If you'll give me

20    one moment, I'll get it for you.

21          (Pause)

22          THE COURT:  Was this case originally in front of

23    Judge Castel?

24          MR. CAFARO:  It was, but we stipulated to the

25    magistrate who is Judge Moses.

1          THE COURT:  Judge Moses, right.  And what --

2          MR. CAFARO:  The --

3          THE COURT:  -- what is the status of that case

4    before the filing?

5          MR. CAFARO:  Before the filing, actually no

6    progress was made toward the beginning of the case because

7    the defendant kept playing musical orders and every time I

8    tried to contact the lawyers to get discovery, I was told

9    that he couldn't get a hold of his client.  The previous

10   attorney moved to withdraw, which was granted, and new

11   counsel has come in who is representing Mr. (indiscernible),

12   the sole principal, since November who has not filed a

13   Chapter 7 himself.  So the case is proceeding against him in

14   the federal court regardless.  There are --

15         THE COURT:  So have you moved in front of Judge

16   Moses for discovery from him?

17         MR. CAFARO:  Yes.  And the first thing I need is

18   the merchant account because I want to see how much has been

19   taken from the credit cards.  His counsel gave me -- just a

20   couple of weeks ago gave me the merchant account number,

21   said it was the Bank of America.  I sent a subpoena to the

22   Bank of America.  It came back the other day saying that,

23   hey, I have no information of any such merchant account.

24         THE COURT:  Right.  But that's an issue for you to

25   take up with Judge Moses, right?

1          MR. CAFARO:  Yes, it is.

2          THE COURT:  Okay.

3          MR. CAFARO:  Yes, it is.

4          THE COURT:  And you're a counsel in that case as

5     well?

6          MR. CAFARO:  Oh, yes, I am.

7          THE COURT:  Okay.

8          MR. CAFARO:  Yes I am.  The case that Your Honor

9     had asked about is Mendez is the first name, plaintiff, and

10    the docket, the Southern District Docket, is 15CV1947.

11         THE COURT:  Okay.  Thank you.

12         MR. CAFARO:  For example though, if I were to ask,

13    I don't think Judge Moses has the power to direct management

14    in the restaurant to show a printout of how the credit card

15    tips are being calculated because there is a stay in effect

16    with respect to the restaurant.  I would have to come here

17    and ask Your Honor that.  This Court is frankly foreign to

18    me, and I really don't know what I'm doing here.

19         This is an argument between a landlord and the

20    restaurant, both who have the wherewithal to retain

21    bankruptcy counsel.  There are not any bankruptcy counsel

22    who will prosecute the case on a contingency.  I had to pay

23    bankruptcy counsel out of my own pocket to get enough

24    guidance to get this before Your Honor in more or less a

25    correct fashion.

1           THE COURT:  Mm hmm.

2           MR. CAFARO:  This is an argument between the

3    landlord and the debtor.  And I am trying to recover money

4    that the debtor has stolen from these four kids that aren't

5    30 years old yet.  And I don't think they should be deprived

6    of their right to a jury trial by the virtue of the

7    bankruptcy filing.  I acknowledge that he hasn't filed a

8    petition in bad faith, but what he's continuing to do is not

9    only in bad faith.  It's outright theft.  I --

10          THE COURT:  All right.  But, counsel, I mean I

11   hear what you're saying and your clients aren't going to be

12   deprived of their right to a jury trial.  They just have to

13   wait.  All right.  I mean so a stay means everything's put

14   on hold, and then that means you as the movant have the

15   burden to come in here and under the Code provisions to make

16   a showing of cause to lift the stay.  So under what sections

17   of the Code are you moving?

18          MR. CAFARO:  Well, frankly, Your Honor, I'm not

19   that familiar with the Bankruptcy Code and --

20          THE COURT:  I mean the problem that you have is as

21   the movant, you have the burden of proof.  I hear what

22   you're saying, and I'm sympathetic to what you're saying,

23   but you have not as best I can tell made out cause under the

24   relevant Code provisions to lift the stay, particularly when

25   I -- I mean you can show cause.

1        That is one of the grounds and then there are a

2    number of factors that I'm supposed to consider, but it

3    doesn't appear to me that your papers make out the statutory

4    grounds for relief at this time, particularly given there is

5    a strong policy that when the movant is an unsecured

6    creditor, which is what your clients are, stay relief ought

7    to be granted more sparingly.

8        MR. CAFARO:  Well, Your Honor, if Your Honor's

9    inclined to deny it, I'm going to have to begin proceeding

10   before this Court to ask -- to compel the discovery I'm

11   talking about because I just can't stand idly by and watch

12   the debtor continue to steal from my clients as each day is

13   passing by.

14       THE COURT:  All right.

15       MR. CAFARO:  And that to me egregious injustice.

16       THE COURT:  All right.  Counsel, on your papers --

17   did you want to consult with -- go ahead.

18       MR. CAFARO:  No, Your Honor.

19       THE COURT:  It's --

20       MR. CAFARO:  Well, I --

21       THE COURT: -- it's fine --

22       MR. CAFARO:  I did ask --

23       THE COURT:  -- if you wish to --

24       MR. CAFARO:  I did ask I believe that the stay be

25   lifted without -- I haven't asked to be able to execute any

1    judgment.  I'm asking that the stay be lifted so I can

2    conduct discovery in the Bankruptcy Court so I won't have to

3    burden Your Honor with it as well.

4              THE COURT:  You're asking for the limited purpose

5    of conducting discovery?

6              MR. CAFARO:  Yes, I am.

7              THE COURT:  All right.  Look, that isn't really

8    what your motion is.

9              MR. CAFARO:  I know.

10             THE COURT:  So your motion is denied without

11   prejudice.  All right.  It is without prejudice.  I'm

12   weighing the (indiscernible) factors.  I don't find that

13   you've made cause on the present showing.  You can proceed

14   in your action against the principal.  As you've pointed

15   out, he's not a debtor in bankruptcy so there is no stay

16   with respect to the principal.  And you can certainly

17   proceed there and ask for Judge Moses' help in getting

18   whatever discovery you can properly get from the principal

19   and you can bring on an application for further relief at an

20   appropriate time or with a further showing or modified

21   relief from what you asked for.

22             MR. CAFARO:  Understood.

23             THE COURT:  Okay.

24             MR. CAFARO:  Thank you.

25             THE COURT:  All right.  So counsel for the debtor,

1  please submit an order in Word format to that effect.

2          MR. GOTTESMAN:  Yes, Your Honor.

3          THE COURT:  All right.  Anything else on the

4  calendar for today?

5          MR. SNYDER:  No, Your Honor.

6          THE COURT:  All right.  All right.  Thank you all

7  for coming in.  We're in recess.

8          (Whereupon these proceedings were concluded at

9  11:46 AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                        Page      Line

5

6    Motion filed by the Debtor for an Order      12        24

7    Authorizing and Ratifying Payment of

8    Prepetition, Accrued Employee Wages, Related

9    Payroll Taxes and Related Obligations Nunc

10   Pro Tunc from November 13, 2016

11

12   Motion Filed by the Debtor to Extend          29        3

13   Exclusivity Period for Filing a Chapter

14   11 Plan and to Solicit Acceptances Thereto

15

16   Motion Filed by Andres Martinez, Myroslava    36        10

17   Velychko, Eman Abdelkarim and Noedith

18   Rojas for Relief from the Automatic Stay

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5
     # Sonya Ledanski                Digitally signed by Sonya Ledanski Hyde
6                                    DN: cn=Sonya Ledanski Hyde, o=Veritext,
     # Hyde                          ou, email=digital@veritext.com, c=US
7                                    Date: 2017.05.23 15:18:19 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20   Veritext Legal Solutions

21   330 Old Country Road

22   Suite 300

23   Mineola, NY 11501

24

25   Date:  May 23, 2017